11/20/2018 4:10 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-006992
Carrisa Stiles

CAUSE NO. **D-1-GN-18-006992**

| | | |
|---|---|---|
| DIRECT BIOLOGICS, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| DOUGLAS SPIEL, | § | |
| | § | |
| Defendant. | § | **419TH** JUDICIAL DISTRICT |

**PLAINTIFF DIRECT BIOLOGIC, LLC'S ORIGINAL PETITION**

Plaintiff Direct Biologics, LLC files its Original Petition against Defendant Douglas Spiel and shows as follows:

**DISCOVERY CONTROL PLAN**

1. Discovery is intended to be conducted as Level 3 in accordance with Texas Civil Procedure Rule 190.4.

**PARTIES**

2. Direct Biologics, LLC is a Wyoming limited liability company with its principal place of business in St. Louis County, Missouri

3. Douglas Spiel ("Spiel") is a New Jersey resident and since April 2017 has been a director for Kimera Labs, Inc. ("Kimera"). Spiel may be served with process at his business address, 1921 Oak Tree Road, Edison, NJ 08820, or wherever he may be found.

**JURISDICTION AND VENUE**

4. Jurisdiction and venue are proper in Travis County, Texas because (i) pursuant to Texas Civil Practice and Remedies Code Section 17.042 and as alleged below, Spiel committed multiple tortious and malicious acts in whole or in part in Texas against Direct Biologics, (ii) all or a substantial part of the events and omissions giving rise to the claims asserted herein occurred

in Travis County, Texas, and (iii) the amount in controversy is within the jurisdictional limits of this Court.

5. Pursuant to Texas Rule of Civil Procedure 47, Direct Biologics seeks monetary relief over $1,000,000.

**CONDITIONS PRECEDENT**

6. Pursuant to Rule 54 of the Texas Rules of Civil Procedure, Direct Biologics pleads that all conditions precedent have been performed or have occurred.

**FACTUAL BACKGROUND**

7. On or about December 6, 2017, Direct Biologics and Kimera entered an Exclusive Distribution and Supply Agreement for the distribution and sales of amniotic products combined with exosomes (the "Original Agreement").

8. On or about April 16, 2018, Direct Biologics and Kimera entered an "updated and restated" agreement related to the distribution and sales of amniotic products combined with exosomes (the "Agreement, and together with the Original Agreement, the "Agreements").

9. The Agreements provided, among other terms, that:

   a. Direct Biologics will be Kimera's exclusive distributor of amniotic products combined with exosomes for the United States and Mexico;

   b. Direct Biologics will be Kimera's exclusive distributor of Amnio2x (Amnio2 combined with exosomes);

   c. Kimera shall prioritize the accreditation process of its lab with the American Association of Tissue Banks ("AATB");

   d. Kimera shall not, during the term of the Agreement and for a period of two (2) years after termination, employ or solicit for hire as an employee any of Direct Biologics' personnel; and

e.  Kimera shall not, directly or indirectly, attempt to take or interfere with any business relationship with a customer, distributor or sub-distributor of Direct Biologics.

10. Spiel was involved in negotiating the terms of the Agreements and was familiar with the terms of the Agreements.

11. AATB accreditation is essential to the placement of amniotic products in medical facilities.

12. Spiel, as a board-certified physician, knew that AATB certification was critical to Direct Biologics' marketing efforts and to the sustainability of the business sales model pursued by Direct Biologics.

## CAUSES OF ACTION

### Count I - Fraud

13. Direct Biologics incorporates each of the foregoing paragraphs as if they were fully set forth herein.

14. In late 2017, Spiel engaged in a fraudulent scheme to convince Direct Biologics to enter into a distribution agreement with Kimera for the purpose of identifying and making direct sales to Direct Biologics' customers.

15. Kimera had developed an amniotic medical product called Amnio2 and Spiel represented to Direct Biologics that Kimera was on the verge of releasing an amniotic product combined with exosomes called Amnio2x.

16. Spiel represented that he wanted Direct Biologics to become Kimera's exclusive distributor of Amnio2 and Amnio2x because of Direct Biologics' reputation in the industry, its wide and deep sales network, and its diverse nationwide customer base.

17. Spiel met with Direct Biologics in Austin, Texas in September 2017, to sell Direct Biologics on Kimera Labs' products and to induce Direct Biologics to enter into the Agreements.

18. During this meeting and during other meetings, Spiel knowingly and intentionally made the following material, false, and misleading representations (the "Fraudulent Statements") to Direct Biologics including the following:

    a. Kimera would expeditiously obtain AATB accreditation;

    b. Kimera was weeks away from releasing Amnio2x;

    c. Kimera was combining Amnio2 with exosomes to produce Amnio2x;

    d. Spiel would personally promote Amnio2 and Amnio2x to Direct Biologics customers; and

    e. Direct Biologics would receive exclusive rights to exosome products.

19. Direct Biologics justifiably and reasonably relied upon the Fraudulent Statements in entering into the Agreements.

20. In reliance on Spiel's Fraudulent Statements, Direct Biologics introduced Spiel and other Kimera employees to Direct Biologics' customers as provided in the Agreements.

21. Instead of marketing Amnio2 or Amnio2x to Direct Biologics' customers, Spiel started marketing a stand-alone exosomes product.

22. Spiel knew that Direct Biologics was launching its company based on its agreement with Kimera to distribute Amnio2 and Amnio2x. Kimera, however, has failed to manufacture Amnio2x and never intended to manufacture Amnio2x. This is evidenced by Spiel's marketing of exosomes, a product designed to compete with Amnio2x.

23. Kimera, in direct contradiction of its statements to Direct Biologics, has developed an exosome product and used the customer information it received from Direct Biologics to sell its exosome product directly to Direct Biologics' customers.

24. Spiel knew when he made the Fraudulent Statements to Direct Biologics that Kimera never intended to develop Amnio2x.

25. Spiel made the Fraudulent Statements with the intent that Direct Biologics would act on them.

26. Spiel knew the Fraudulent Statements were false at the time they were made.

27. Kimera has not taken the necessary steps toward obtaining AATB accreditation, and never intended to, as Spiel's statements regarding AATB accreditation were made for the purpose of inducing Direct Biologics to enter into the Agreements.

28. As a result of the Fraudulent Statements, Direct Biologics suffered substantial damages and losses including the following:

    a. Loss of sales to medical facilities which require AATB accreditation of labs to supply medical products such as Kimera's amniotic products;

    b. Loss of reputation in the industry;

    c. Loss of customers and distributors;

    d. Loss of employees;

    e. Loss of profits; and

    f. Loss of other business opportunities, including but not limited to the ability to contract with others for the sale of amniotic and exosome products.

29. Spiel is personally liable for the damages resulting from the Fraudulent Statements because of his direct and intentional participation in a scheme to defraud Direct Biologics. *See*

*Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 541 (Tex. App. 1989) (holding that a corporate officer may be held personally liable to third parties if he knowingly participates in fraudulent activity, even though he performed acts as agent of corporation, and it is not necessary to pierce corporate veil in order to impose individual liability).

30.     Spiel's actions were intentional, premeditated and malicious, entitling Direct Biologics to exemplary damages under Texas Civil Practice and Remedies Code Section 41.008.

### Count 2 - Tortious Interference with the Agreements

31.     Direct Biologics incorporates each of the foregoing paragraphs as if they were fully set forth herein.

32.     Spiel has solicited and continues to solicit Direct Biologics' customers for the purpose of selling them amnio and exosome products for which Direct Biologics has the exclusive right to market and sell under the Agreements.

33.     Spiel has caused Kimera to sell Amnio2 directly to Direct Biologics' customers in breach of the Agreements.

34.     Spiel had direct personal knowledge of the Agreements but willfully and intentionally interfered with the Agreements for purposes of harming Direct Biologics.

35.     As a direct and proximate result of Spiel's interference, Direct Biologics has suffered actual damages in lost sales.

36.     Spiel's actions were premeditated and malicious, entitling Direct Biologics to exemplary damages under Texas Civil Practice and Remedies Code Section 41.008.

### JURY DEMAND

37.     Direct Biologics demands a jury trial and tenders the appropriate fee.

**PRAYER**

For the foregoing reasons, Direct Biologics, LLC respectfully prays that the Court award a judgment against Douglas Spiel for the following:

    a)    Direct Biologic's actual damages,

    b)    Exemplary damages,

    c)    Pre and post-judgment interest,

    d)    Direct Biologic's attorneys' fees and costs, and

    e)    All other relief to which Direct Biologics may be justly entitled.

Dated: November 20, 2018

Respectfully submitted,

**THOMPSON & KNIGHT, LLP**
By: /s/ John P. Vacalis

John P. Vacalis
State Bar No. 24042076
john.vacalis@tklaw.com
98 San Jacinto Boulevard
Suite 1900
Austin, TX  78701
Phone:  (512) 469-6100
Fax:  (512) 469-6180

**ATTORNEYS FOR PLAINTIFF**